**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **ANGELIA BROWN,** *et al.***,** | * | |
| Plaintiffs, | * | |
| v. | * | Case No.: DLB-21-591 |
| **EMERY FEDERAL CREDIT UNION,** | * | |
| Defendant. | * | |

**MEMORANDUM OPINION**

Angelia Brown, Michael and Sharlene Ellis, Joseph Taylor, and Angelia (Miller) Mincey, all of whom received residential home mortgage loans originated or brokered by defendant Emery Federal Credit Union ("Emery" or "Credit Union"), bring the instant action in which they allege violations of the Real Estate Settlement Procedures Act ("RESPA") and the Racketeer Influence Corrupt Organizations Act ("RICO"). ECF 1. Emery has moved to transfer the case to the Southern District of Ohio pursuant to 28 U.S.C. § 1404. ECF 18. It argues a forum-selection clause in a contract to which plaintiffs are bound requires transfer of this case to Hamilton County, Ohio, where a federal court in the Southern District of Ohio is located. ECF 18. The motion is ripe for disposition. ECF 27 & 29. The Court finds that the mandatory forum-selection clause covers the claims at issue in this case and that it would not be unreasonable to enforce it. Because the clause provides that plaintiffs' claims must be brought in Hamilton County, Ohio, the motion to transfer is granted.[1]

---

[1] Defendant also has moved to dismiss the complaint in its entirety. ECF 19. Because the Court grants the motion to transfer, it declines to decide the pending motion to dismiss.

**I.     Background**

This case involves an allegedly illegal kickback agreement between Emery and All Star Title, Inc. ("All Star"), for which plaintiffs claim to have paid the price. For the purposes of the pending motion to transfer, the underlying dispute is relevant to the extent it implicates a forum-selection clause Emery argues prevents this Court from adjudicating this case. Indeed, this case is predicated on another case filed in and dismissed without prejudice by the Southern District of Ohio. *See Solis v. Emery Fed. Credit Union*, 459 F. Supp. 3d 981, 996 (S.D. Ohio 2020).

Plaintiffs refinanced mortgage loans with Emery's assistance. Emery, in turn, referred plaintiffs to All Star for settlement services. Plaintiffs allege they paid illegitimate and inflated fees for those services, unwittingly and unwillingly funding an illegal kickback agreement whereby All Star defrayed Emery's marketing costs in exchange for the referrals. In support of these allegations, plaintiffs attached numerous documents to their complaint, most of which apparently evidence emails between All Star and representatives from a variety of lenders and Emery. According to plaintiffs, these emails and other documents showing the details of the plaintiffs' loans and closing costs establish Emery's liability under RESPA and RICO. But that issue is not before the Court today. Nor does the pending motion to transfer more than tangentially touch upon the merits of those claims. Rather, the motion to transfer primarily presents two questions: whether the contract containing the forum-selection clause is valid and, if so, whether it should be enforced.

Attached to Emery's motion to transfer are "Membership Application and Ownership Information" forms that the plaintiffs filled out and signed.[2] According to Troy Cyrus, Emery's

---

[2] Mrs. Ellis did not fill out the form, but her husband did. Plaintiffs do not argue this fact is material to the pending motion.

compliance manager, "[i]n order to obtain a mortgage loan from Emery FCU, a borrower who is not already a member of Emery FCU must sign up to join the credit union." ECF 18-2, ¶ 6. Each plaintiff who filled out an application signed an agreement that states:

> By signing below, I/we agree to the terms and conditions of the Membership and Account Agreement, Truth-in-Savings Disclosure, Funds Availability Policy Disclosure, if applicable, and to any amendment the Credit Union makes from time to time which are incorporated herein. I/We acknowledge receipt of a copy of the agreements and disclosures applicable to the accounts and services requested herein. If an access card or EFT service is requested and provided, I/we agree to the terms of and acknowledge receipt of the Electronic Fund Transfers Agreement and Disclosure.

ECF 18-3 – 18-6. While plaintiffs uniformly affirm they do not recall signing the applications, they also unanimously identify the signatures on the applications as their own. ECF 27-1 – 27-4.

Also attached to Emery's motion to transfer is a copy of the Membership and Account Agreement ("MAA") in effect at the time the plaintiffs signed the applications. ECF 18-7. It begins, "This Agreement covers your rights and responsibilities concerning your accounts and the rights and responsibilities of the Credit Union providing this Agreement." ECF 18-7, at 2. The MAA contains a forum-selection clause: "As permitted by applicable law, you agree that any legal action regarding this Agreement shall be brought in the county in which the Credit Union is located." ECF 18-7, ¶ 34. Plaintiffs concede Emery is incorporated and has its principal place of business in Hamilton County, Ohio. ECF 9, ¶ 14. The MAA contains another clause relevant to the pending motion. It provides that "[a]ny conflict regarding what you and our employees say or write will be resolved by reference to this agreement." ECF 18-7, ¶ 17.

**II. Discussion**

Emery moves to transfer this case to the Southern District of Ohio pursuant to 28 U.S.C. § 1404(a). That statute provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might

3

have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Section 1404(a) "permits transfer to any district where venue is also proper . . . or to any other district to which the parties have agree by contract or stipulation. Section 1404(a) therefore provides a mechanism for enforcement of forum-selection clauses that point to a particular federal district." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 59 (2013). "[A] proper application of § 1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases." *Id.* at 59–60 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring)); *see also BAE Sys. Tech. Sol. & Servs., Inc. v. Republic of Korea Def. Acquisition Program Admin.*, 884 F.3d 463, 471 (4th Cir. 2018).

When deciding whether to grant a motion to transfer venue under § 1404(a), courts "ordinarily" weigh several factors, including convenience to the parties and witnesses and the plaintiffs' choice of forum. *Atl. Marine Const. Co.*, 571 U.S. at 62–63. But "[t]he calculus changes . . . when the parties' contract contains a valid forum-selection clause, which represents the parties' agreement as to the most proper forum.'" *Id.* (quoting *Stewart* 487 U.S. at 31). In such circumstances, the plaintiff's "choice of forum merits no weight," and the Court "should not consider arguments about the parties' private interests." *Id.* at 63–64. The Court may consider only public-interest factors. *Id.*

Additionally, "a federal court interpreting a forum selection clause must apply federal law in doing so." *Albemarle Corp. v. AstraZeneca UK Ltd.*, 628 F.3d 643, 650 (4th Cir. 2010). Federal law generally favors enforcement of forum-selection clauses. *Id.* at 649. Valid forum-selection clauses are presumptively enforceable when (1) the clause is "mandatory rather than permissive," *BAE Sys. Tech. Sol. & Servs.*, 884 F.3d at 470, and (2) "the claims fall within the scope of the forum-selection clause," *Evans v. Cantor Ins. Grp.*, No. GJH-21-617, 2021 WL 4951917, at *3

4

(D. Md. Oct. 25, 2021) (citing *Open Text Corp. v. Grimes*, 262 F. Supp. 3d 278, 287 (D. Md. 2017)*; Olawole v. Actionet, Inc.*, No. PX-16-3506, 2017 WL 1230821, at *2 (D. Md. Apr. 4, 2017)). A plaintiff may overcome the presumption of enforceability by demonstrating enforcement of the clause would be unreasonable. *Albemarle Corp.*, 628 F.3d at 649; *BAE Sys. Tech. Sol. & Serv.*, 884 F.3d at 471.

Courts outside the Fourth Circuit deciding a motion to transfer under § 1404(a) have considered "evidence external to the complaint." *Anderson v. TransUnion, LLC*, No. 17-1813, 2018 WL 334495, at *3 n.2 (E.D. Pa. Jan. 9, 2018); *Panaserve, LLC v. Trion Sols., Inc.*, No. 19-cv-16496-NLH, 2021 WL 2644122, at *2 n.3 (D.N.J. June 29, 2021). The parties ask the Court to do so here.

### A. Validity of the Contract

Before the Court considers whether the forum-selection clause should be enforced, the Court first addresses the threshold question of whether the MAA, the contract containing the clause, is valid. Plaintiffs argue the forum-selection clause should not be enforced because the contract is invalid for lack of consideration and mutual assent. Defendant disagrees, arguing that the MAA was supported by valid consideration and that the plaintiffs agreed to be bound by its terms. The parties do not squarely address whether the Court should look to Maryland or Ohio law to resolve these issues. Plaintiffs cite Maryland law; defendant cites Ohio law. Because there is no meaningful difference between the states' laws on consideration and mutual assent, the Court cites and applies the law of both states.

The Court first addresses mutual assent. Plaintiffs argue that they did not assent to the terms of the MAA because they did not sign the MAA. ECF 27, at 18–22. "Manifestation of mutual assent requires that each party make a promise or begin to render performance." *Costner*

5

*Consulting Co. v. U.S. Bancorp*, 960 N.E.2d 1005, 1010 (Ohio Ct. App. 2011); *see Cochran v. Norkunas*, 919 A.2d 700, 708 (Md. 2007) ("Manifestation of mutual assent includes two issues: (1) intent to be bound, and (2) definiteness of terms.").

In their applications to become members of the Credit Union, the plaintiffs signed a statement that directly referenced the MAA and indicated their agreement to its terms and conditions. ECF 18-3 (Angelia Brown's member application); ECF 18-4 (Angelia Miller's member application); ECF 18-5 (Michael Ellis' member application); ECF 18-6 (Joseph Taylor's member application). Above their signature, the membership applications state: "By signing below, I/we agree to the terms and conditions of the Membership and Account Agreement [and other documents not relevant here] . . . which are incorporated herein. I/We acknowledge receipt of a copy of the agreements and disclosures applicable to the accounts and services requested herein." ECF 18-3 – 18-6. Plaintiffs now claim that never received or reviewed the MAA before signing the application. Even if true, the MAA was part of the application because it was incorporated by reference. Both Ohio and Maryland have adopted "the doctrine of incorporation by reference." *See Volovetz v. Tremco Barrier Sols., Inc.*, 74 N.E.3d 743, 751 (Ohio Ct. App. 2016); *see, e.g.*, *Woodpoint Seafood Grill, LLC v. Woodpoint Bar & Grill, Inc.*, No. 21-C-17-59303-DJ, 2020 WL 1487696, at *2–3 (Md. Ct. Spec. App. Mar. 25, 2020). "Under that doctrine, when a document is incorporated into a contract by reference, that document becomes part of the contract." *Volovetz*, 74 N.E.3d at 751; *see, e.g., Woodpoint*, 2020 WL 1487696, at *2–3. "The parties to a contract may incorporate contractual terms by reference to a separate, noncontemporaneous document, including . . . a separate document which is unsigned, if the contract makes clear reference to the document and describes in such terms that its identity may be ascertained beyond doubt." *Volovetz*, 74 N.E.3d at 751 (quoting 11 Lord, *Williston on*

6

*Contracts*, Section 30:25, at 294–301 (4th Ed. 2012)) (internal quotation marks omitted); *see also Woodpoint*, 2020 WL 1487696, at *2–3. By signing the membership application, plaintiffs agreed to the terms and conditions of the incorporated-by-reference MAA, and they therefore intended and promised to be bound by the MAA's terms, including its forum-selection clause. *Frazier v. Navistar Int'l Transp. Corp.*, No. 99-CA-89, 2000 WL 426162, at *5 (Ohio Ct. App. Apr. 21, 2000) (finding a contract was valid because, in part, the party's "signature on the application manifested a clear intent to enter into the bargain").

Plaintiffs cite *Versus Evil LLC v. PNC Bank, N.A.*, and *Ripley v. Long Distance Relocation Services, LLC*, for their position that they did not assent to the terms of the MAA. *Versus Evil*, --- F. Supp. 3d ----, 2020 WL 2112155 (D. Md. May 4, 2020); *Ripley*, No CCB-19-373, 2019 WL 5538343 (D. Md. Oct. 25, 2019). Both cases are distinguishable. In *Versus Evil*, the plaintiffs signed a statement that they acknowledged receipt of the relevant agreement and that the agreement was binding on the defendant company. 2020 WL 2112155, at *4. The statement said nothing about the plaintiffs' agreement to be bound by the terms of the agreement, and mere acknowledgement of receipt of an agreement does not amount to a binding acceptance of its terms. *Id.* In *Ripley*, the defendant provided proof only that the plaintiffs signed an addendum to a contract containing the forum-selection clause. 2019 WL 5538343, at *4. There was no indication that the two documents cross-referenced each other. *See id.*

Here, in contrast, the plaintiffs signed a document that specifically incorporated the MAA by reference, and by their signatures, they stated they agreed to the MAA's terms and conditions. That plaintiffs do not recall signing the document or ever receiving the MAA or any confirmation regarding the next steps taken after they signed does not undermine the fact that they did, in fact, sign the forms. ECF 27-1 – 27-4 (containing declarations from the plaintiffs in which they admit

7

the signatures on the member application forms are their own); *see Bennett v. KeyBank, N.A.*, No. L-19-1249, 2020 WL 1492573, at *5 (Ohio Ct. App. Mar. 27, 2020) (finding the plaintiff's "signature constitute[d] an acknowledgement that" the plaintiff agreed to the "terms and conditions" and that whether the plaintiff "actually reviewed the terms and conditions" was "irrelevant, because the incorporation was clearly stated within the document [the plaintiff] voluntarily executed"); *Holloman v. Cir. City Stores, Inc.*, 894 A.2d 547, 556 (Md. 2006) ("[U]nder Maryland law, a party who signs a contract is presumed to have read and understood its terms and as such will be bound by its execution.").

Plaintiffs also argue the MAA was not supported by consideration. Specifically, they claim that the "benefits" the MAA conferred upon them were mere gifts. ECF 27, at 17. Consideration is "the bargained for legal benefit and/or detriment." *Minster Farmers Coop. Exchange Co., Inc. v. Meyer*, 884 N.E.2d 1056, 1061 (Ohio 2008); *Cnty. Comm'rs for Carroll Cnty., Md. v. Forty West Builders, Inc.*, 941 A.2d 1181, 1213–14 (Md. Ct. Spec. App. 2008) ("consideration may be established by showing a benefit to the promisor or a detriment to the promise") (citing *Harford Cnty. v. Town of Bel Air*, 704 A.2d 421, 430 (Md. 1998) (quoting *Vogelhut v. Kandel*, 517 A.2d 1092, 1096 (Md. 1986))). "Although courts generally do not inquire into the adequacy of consideration if consideration is found to exist, courts must determine whether any consideration was really bargained for." *Cincinnati Reds, L.L.C. v. Testa*, 122 N.E.3d 1178, 1184 (Ohio 2018) (internal quotation marks omitted); *see Lillian C. Blentlinger v. Cleanwater Linganore, Inc.*, 173 A.3d 549, 567 (Md. 2017) (stating "it is basic contract law that courts generally will not inquire as to the adequacy of consideration") (citing *Vogelhut*, 517 A.2d at 1096). "[T]he requirement for consideration is what distinguishes a contract from a gift." *Williams v. Ormsby*, 966 N.E.2d 255,

8

260 (Ohio 2012); *Vincent v. Palmer*, 19 A.2d 183, 187 (Md. 1941) (distinguishing between "a mere gratuity" and "a contract with valuable consideration").

Here, there was consideration for the MAA. Signing the membership application, which incorporated the MAA by reference and bound plaintiffs to its terms, was a prerequisite to receiving Emery's services. ECF 18-2, ¶ 6; ECF 27-6, at 2 (sample enrollment package indicating application form "must be filled out by the borrowers"). Thus, to refinance their loans through Emery, plaintiffs had to consent to the terms and conditions of the MAA. This exchange—the agreement to the MAA's terms for refinancing their loans through Emery—conferred benefits and obligations on plaintiffs. Among those obligations was compliance with the forum-selection clause.

The MAA, furthermore, outlines other rights and benefits plaintiffs received. Plaintiffs received the right to transfer or withdraw funds in numerous ways, including by ATM, in person, by mail, through the internet, and by telephone. ECF 18-7, at 3. They also received the rights to order electronic fund transfers either from or to their accounts and to contact Emery to determine whether payments have been received. *Id.* Emery promised to pay interest and dividends in the event those payments were delayed. *Id.* Plaintiffs also received benefits from Emery. Plaintiffs were entitled to receive the name of every agency from which Emery receives a credit report and to terminate their membership at any time. *Id.* at 6. Emery also agreed to "be liable for [plaintiffs'] losses or damages not to exceed the amount of" an improperly completed transaction. *Id.* at 5. It promised "not to disclose account information to third parties" except in four circumstances. *Id.* These rights and benefits constitute consideration. *See Rudolph v. Wright Patt Credit Union*, 175 N.E.3d 636, 656 (Ohio Ct. App. 2021) (finding consideration existed where credit union members got "free internet access to accounts, . . . free mobile banking, free telephone and automated teller

9

access, free bill payment free consumer accounts, and no monthly fee for Total Fair Checking accounts"); *Lillian C. Blentlinger*, 173 A.3d at 578–82 (concluding an agreement was supported by adequate consideration based on the various rights and responsibilities assumed by the contracting parties under the terms of the contract).

Ignoring the plethora of rights and responsibilities conferred by the MAA, plaintiffs claim the agreement does not bind them because the only benefits they perceived were merely gifts. ECF 27, at 17. In plaintiffs' view, because Emery sent them, as part of its enrollment package, a document indicating the credit union account, a five-dollar deposit, and a ten-dollar donation were "complimentary," they received no valuable consideration for their agreement to the MAA. *Id*. While a five-dollar deposit into a cost-free account and a ten-dollar donation may have been gifts, they are incidental to the rights, benefits, and obligations conferred on plaintiffs as consideration for the MAA, to which they were required to agree prior to receiving services from Emery.

The Court finds that plaintiffs intended and assented to be bound by the MAA's terms and that the MAA was supported by consideration.

### B.   Forum-Selection Clause

Having established that the MAA was not invalid for lack of consideration or mutual assent, the Court now considers whether its forum-selection clause should be enforced in this case.

This Court has previously granted a motion to transfer to the Southern District of Ohio filed by Emery and based on the same forum-selection clause. *Fangman v. Genuine Title, LLC*, No. RDB-14-81, 2015 WL 8315704, at *12–15 (D. Md. Dec. 19, 2015). In *Fangman*, the Court considered whether several marketing and financial institutions, including Emery, violated RESPA by "receiv[ing] and accept[ing] cash payments, free marketing materials, and other things of value" from a title and settlement services company, Genuine Title, LLC ("Genuine"), in exchange for

10

referring borrowers to Genuine. *Id.* at *2. Emery sought severance and transfer of the claims against it on the grounds that a valid forum-selection clause identical to the one at issue here required the claims to be brought in the Hamilton County, Ohio. *Id.* at *13; *compare id.* at *13, *with* ECF 18-7, at 6. The Court concluded the forum-selection clause was mandatory because it made jurisdiction proper in only one forum: Hamilton County, Ohio. *Id.* (quoting *Belfiore v. Summit Fed. Credit Union*, 452 F. Supp. 2d 629, 631 (D. Md. 2006)).

Proceeding to the scope of the forum-selection clause, the Court found the claims were "regarding" the operative agreement, noting that courts have "interpreted forum selection clauses like the one at issue as applying to a broad array of claims related to the parties' contractual relationship." *Id.* at *14. The Court further noted that submitting the application was a precondition to receiving loans through Emery. *Id.* And because the plaintiffs' factual allegations "focus[ed] on referrals made to [the p]laintiffs by mortgage brokers employed by Emery" and "those referrals supposedly occurred around the time of closing . . . and involved loans obtained from Emery," the Court found the RESPA claims fell within the scope of the forum-selection clause. *Id.*

Plaintiffs argue that this Court should not follow *Fangman* because the Court in *Fangman* did not decide whether the underlying contract was invalid or whether the enforcement of the forum-selection clause would be unreasonable, as plaintiffs argue here. ECF 27, at 15–17. For the reasons discussed above and below, the Court sees no reason to depart from the sound analysis in *Fangman*.

### 1. Mandatory

The "presumption of enforceability . . . only applies if the forum selection clause is mandatory rather than permissive." *BAE Sys. Tech. Sol. & Servs.*, 884 F.3d at 470 (citing

11

*Albemarle Corp.*, 628 F.3d at 650–51). "A mandatory clause requires litigation to occur in a specified forum; a permissive clause permits litigation to occur in a specified forum but does not bar litigation elsewhere." *Id.* (citing *Albemarle Corp.*, 628 F.3d at 650–51).

The forum-selection clause at issue here provides that "any legal action regarding th[e] Agreement shall be brought in the county in which the Credit Union is located." ECF 18-7, at 6; ECF 18-8, at 7. Plaintiffs make several unconvincing arguments that this clause is permissive, not mandatory.

Plaintiffs argue use of the word "shall" does not necessarily mean the clause is mandatory. They cite *BAE Systems* and *Auto Body Express LLC v. Corp. ADR LLC*, No. 8:20-cv-3349-DCC, 2021 WL 2291776, at *2 (D.S.C. June 4, 2021), for the proposition that, "in context, the clause [using shall] may still 'permit[] jurisdiction in one court but . . . not prohibit jurisdiction in another.'" ECF 27, at 26. But the language of the forum-selection clauses in those cases is different than the language at issue here. In *BAE Systems*, the forum selection clause provided that disputes "shall be resolved through a litigation and the Seoul Central Court shall hold jurisdiction." 884 F.3d at 469. That clause established jurisdiction, not venue, and jurisdiction in Seoul was not exclusive because there could be jurisdiction in another court without conflicting with the language of the clause. Similarly, in *Auto Body Express*, the clause created jurisdiction in a specific location but did not exclude the possibility of jurisdiction in other forums. 2021 WL 2291776, at *2. In this case, however, the word "shall" makes the clause mandatory because it requires that any legal action "shall be brought in the county in which the Credit Union is located" and thus precludes jurisdiction in other forums. It does not state that courts in that county shall have jurisdiction, which would be analogous to the clause in *BAE Systems*. Under the MAA's forum-selection

clause, bringing a legal action in *any* county besides the county in which Emery is located would violate the plain terms of the clause. Legal actions must be brought in the specified county.

Plaintiffs alternatively argue the forum-selection clause is not mandatory because "where the Credit Union is located" could refer to multiple counties because Emery maintains a number of branches outside Hamilton County. *Id.* at 27. This argument is without merit. First, plaintiffs concede Emery is incorporated and has its principal place of business in Hamilton County, Ohio. ECF 9, ¶ 14. Second, the language of the clause itself does not support this broad reading. The clause uses the definite article "the" to refer to the appropriate county, suggesting only one county fits the bill. It also uses a definite article where it refers to "the" Credit Union—not "any branch or office" of the Credit Union, as plaintiffs argue. And third, this Court has enforced forum selection clauses containing identical language. *See, e.g.*, *Fangman*, 2015 WL 8315704, at *12–15 (enforcing an identical forum selection clause); *Belfiore*, 452 F. Supp. 2d at 631, 633–34 (enforcing a forum selection clause limiting venue to "the county in which the Credit Union is located").

Plaintiffs finally argue the forum selection clause is not exclusive because it refers only to a county and thus creates venue in both state and federal courts. But this possibility does not undermine the exclusivity of the forum selection clause under Fourth Circuit caselaw, which recognizes and enforces forum selection clauses limiting the geographic location of an action, inclusive of federal and state courts. *Bartels ex rel. Bartels v. Saber Healthcare Group, LLC*, 880 F.3d 668, 676 (4th Cir. 2018) ("forum-selection clauses using geographical limitations permit the case to be filed with any court, whether state or federal, that is *located within the contractually described geographical boundary*") (emphasis in original); *FindWhere Holdings, Inc. v. Sys. Env't Optimization, LLC*, 626 F.3d 752, 755 (4th Cir. 2010) (adopting the "widely accepted rule that

13

forum selection clauses that use the term 'in [a state]' express the parties' intent as a matter of geography, permitting jurisdiction in both the state and federal courts of the named state, whereas forum selection clauses that use the term 'of [a state]' connote sovereignty, limiting jurisdiction over the parties' dispute to the state courts of the named state").

The Court finds that the forum-selection clause is mandatory. The clause requires that any legal action regarding the MAA must be brought in Hamilton County, Ohio.

### 2. Within the Scope of the Clause

Plaintiffs argue the claims in this case fall outside the scope of the forum-selection clause because they do not arise from the express terms of the contract. A forum-selection clause is presumptively enforceable only where the claims asserted fall within the scope of the clause. *Evans*, 2021 WL 4951917, at *3. "To determine the scope of the forum selection clause, 'the court 'looks to the language of the parties' contracts to determine which causes of action are governed by [the clause].'" *Brooks-Williams v. Keybank, Nat'l Ass'n*, No. WDQ-15-559, *5 (D. Md. Dec. 17, 2015) (quoting *NC Contracting, Inc. v. Munlake Contractors, Inc.*, No. 5:11-CV-766-FL, 2012 WL 5303295, at *6 (E.D.N.C. Oct. 25, 2012) (quoting *Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216, 222 (5th Cir. 1998))).

The forum selection clause in this case provides that "any legal action *regarding this Agreement* shall be brought in the county in which the Credit Union is located." ECF 18-7, at 6 (emphasis added). Elsewhere, the MAA states: "*Any conflict* regarding what you and our employees say or write will be resolved by reference to this Agreement." *Id.* at 5 (emphasis added). These broad provisions encompass plaintiffs' claims because the legal action relates to what Emery's employees said or wrote in connection with the refinancing of plaintiffs' loans. Indeed,

14

what Emery's employees did, said, and wrote is the very substance of the principal claims in this suit.

Plaintiffs allege Emery "financed into borrowers' loans" illegitimate charges by "falsely allocating title and settlement fees," "manipulating the APR associated with loans," and making "false and fraudulent representations and omissions in borrowers' loan documents." ECF 9, ¶¶ 6, 8, 26. They further allege:

> At all relevant times, the Emery branch managers, loan officers, and other employees participating in the [k]ickback [a]greement [were] license mortgage brokers and/or authorized loan officers, and at all relevant times were acting within the scope of the business relationship and their employment on behalf of Emery, specifically seeking borrowers and originating and securing loans for residential mortgages through Emery and/or brokering such loans through Emery to other lenders with whom Emery authorized, referring Emery borrowers to title companies, and working with title companies to close these loans.

*Id.* ¶ 56. Plaintiffs allege Emery represented in borrower solicitations that borrowers would save 30–40 percent on title and settlement services by using All Star. *Id.* ¶ 69.

These "false and fraudulent representations and omissions [appear] in borrowers['] loan documents, including the Truth in Lending Act . . . Disclosure, the Good Faith Estimate, the Direct Endorsement, and the HUD-1 Settlement Statement." *Id.* ¶ 39. Plaintiffs allege that Emery provided them the Good Faith Estimate and fraudulently included or omitted certain charges on the Good Faith Estimate as part of its allegedly illegal scheme. *Id.* ¶¶ 169–76. Elsewhere, plaintiffs allege Emery falsely certified on the Direct Endorsement of the HUD-1 form that the charges on VA or FHA loans complied with applicable regulations. *Id.* ¶¶ 185–86. This certification was "presented to borrowers." *Id.* ¶ 185. Plaintiffs also allege, "[a]s a condition of funding their loan, Emery require[d] the . . . [p]laintiffs to participate in a closing, and the . . . [p]laintiffs attend[ed] and fully participate[d] in the required closing and review[ed] all documents with All Star's representative." *Id.* ¶¶ 197, 214, 231, 248.

15

These allegations of fraud and misrepresentation concern a conflict regarding what Emery employees represented to plaintiffs. This conflict must be "resolved by reference to [the MAA]." *See* ECF 18-7, at 5. The MAA, in turn, contains the mandatory forum-selection clause.

Plaintiffs argue the MAA does not cover claims relating to the mortgages Emery brokered for plaintiffs because mortgages are not "accounts" within the meaning of the MAA. This argument elides a critical fact: The MAA is a *membership and account* agreement. *See* ECF 18-7, at 2. By signing the agreement, plaintiffs agreed that Emery could "verify [their] eligibility for the accounts *and services* [they] request[ed]." *Id.* (emphasis added). Among the services Emery provided was its origination or brokerage of plaintiffs' loans. To refinance through Emery, plaintiffs had to become members of the Credit Union, a fact that plaintiffs have not disputed in their opposition. Thus, the legal action "regards" the membership agreement.

Plaintiffs attempt to distinguish this case from *Belfiore v. Summit Federal Credit Union* and *Varsity Gold, Inc. v. Lunenfeld*, both of which held the alleged torts fell within the applicable forum-selection clauses. *Belfiore*, 452 F. Supp. 2d 629 (D. Md. 2006); *Varsity Gold*, No. CCB-08-550, 2008 WL 5243517 (D. Md. Dec. 12, 2008). In so doing, they misconstrue the holdings in those cases, arguing they held that a forum-selection clause applies only if the claims "arise from accounts held with the credit union" and "only where the allegations are built on the terms of the agreement." ECF 27, at 19. Neither case's holding is so limited, and neither controls this case or espouses law that conflicts with any law the Court cites. Rather, *Belfiore* and *Varsity Gold* stand as examples in which the Court looked at the nature of the claims and the relevant language of the applicable forum-selection clauses and determined certain torts fell within their scope. The Court follows the same steps followed in *Belfiore* and *Varsity Gold* and finds, as in those cases, the claims fall within the forum-selection clause.

16

### 3. Unreasonable

Plaintiffs argue it would be unreasonable to enforce the clause because it is the product of fraud and overreach. ECF 27, at 28–29. They claim the memberships and savings accounts were represented as automatic and complimentary and came to them with "no strings attached." *Id.* at 28.

"[A] forum selection clause may be found unreasonable if . . . [its] formation was induced by fraud or over-reaching." *Albemarle Corp*, 628 F.3d at 651 (quoting *Allen v. Lloyd's of London*, 94 F.3d 923, 928 (4th Cir. 1996) (summarizing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12–13 (1972); citing *Carnival Cruise Lines v. Shute*, 499 U.S. 585, 595 (1991)). "This . . . does not mean that any time a dispute arising out of a transaction is based upon an allegation of fraud . . . the clause is unenforceable." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 59 n.14 (1974). "Rather, it means that" a "forum-selection clause in a contract is not enforceable if the inclusion of that clause in the contract was the product of fraud or coercion." *Id.*; *see also Callendar v. Anthes*, No. DKC-14-0121, 2014 WL 1577787, at *7 (D. Md. Apr. 18, 2014) (finding enforcement of a forum selection clause not unreasonable in part because the allegation of fraud did not relate specifically to the forum selection clause). Plaintiffs bear the burden of showing enforcement would be unreasonable. *BAE Sys. Tech. Sol. & Serv.*, 884 F.3d at 471.

Plaintiffs claim Emery lied when it told them that they would automatically become members of the Credit Union when their transaction was complete. ECF 27, at 23. Now, plaintiffs claim, Emery has changed its tune by asserting they were required to join the credit union to obtain the loan. *Id.* at 23-24. To prove fraud under Ohio and Maryland law, a plaintiff must show, among other things, that there was a misrepresentation, that the plaintiff justifiably relied upon it, and that the misrepresentation was made for the purpose of defrauding the plaintiff or with the intent of

17

misleading the plaintiff into relying on it. *State ex rel. Seibert v. Richard Cyr, Inc.*, 134 N.E.3d 1185, 1194 (Ohio 2019); *Thomas v. Nadel*, 48 A.3d 276, 282 n.18 (Md. 2012).

Even assuming a misrepresentation was made here, the Court finds no merit to the fraud allegation because plaintiffs do not claim they relied on it or that Emery made the misrepresentation with the intent to defraud. More significantly, plaintiffs do not make a single allegation or argument that the inclusion of the forum-selection clause itself was the product of fraud. *Scherk*, 417 U.S. at 59 n.14; *Callendar*, 2014 WL 1577787, at *7. Plaintiffs have not shown enforcement of the forum-selection clause would be unreasonable. Accordingly, the Court finds plaintiffs have not overcome the presumption of enforceability in this case.

The Court finds the forum-selection clause is mandatory, applies to these claims, and should be enforced. The motion to transfer this case to the Southern District of Ohio is granted.

### C. Motion for Discovery

Plaintiffs ask for leave to take discovery to resolve factual disputes they believe are relevant to whether the forum-selection clause is valid, mandatory, or enforceable. ECF 27, at 24–26. They want to depose Emery's compliance manager, Troy Cyrus, about the use of Emery's enrollment package offering a complimentary account, donation, and initial deposit and about Emery's internal investigation into the alleged failure to establish the promised savings accounts. They also seek written discovery and documents regarding whether plaintiffs received the MAA, as well as the plaintiffs' complete loan files to demonstrate Emery's limited role as broker, not lender. Such discovery is unnecessary and unwarranted.

First, Emery concedes the savings accounts, five-dollar deposit, and ten-dollar donation were complimentary to individuals, such as plaintiffs, who signed up to join the Credit Union. The fact that these specific items may have been complimentary does not change this Court's view that

18

consideration supported the agreement or that the forum-selection clause is mandatory, applicable, and should be enforced.

Second, whether the savings accounts were opened is immaterial to whether the forum-selection clause is valid and enforceable. As Emery correctly points out, that issue goes to performance under the contract, not existence of a contract. Additionally, the applications plaintiffs signed were for a membership with Emery. Plaintiffs do not argue they were not members at Emery, and because the MAA governs their membership in the Credit Union, including their Credit Union accounts, any discovery relating to the savings accounts would not affect the applicability of the forum-selection clause.

Third and finally, whether Emery brokered, as opposed to financed, the loans is also immaterial. The Court has already rejected plaintiffs' restrictive reading of the MAA, which they contend applies only to the savings accounts Emery may have created for them. As discussed above, the MAA and its forum-selection clause reach a wide variety of transactions with Emery: all those regarding anything Emery or its employees say or write to people who have agreed to the MAA's terms. Whether Emery brokered or funded the loans is immaterial where, as here, its employees did one or the other by communicating to borrowers who agreed to the MAA's terms.

None of the discovery plaintiffs seek would change the facts that form the basis for the Court's decision to transfer the case. The motion for discovery is denied.

### III. Conclusion

The forum-selection clause in the MAA is presumptively enforceable. Plaintiffs have not shown its enforcement would be unreasonable. Accordingly, this case is transferred to the Southern District of Ohio. The motion to dismiss remains pending. A separate Order follows.

Date: March 31, 2022

_____
Deborah L. Boardman
United States District Judge